## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Alexandria H. Orta,                                    Case No. 3:22-CV-00359-JGC

        Plaintiff

     v.                                              **ORDER**

Mark E. Repp,

        Defendant.

     This is a civil rights case. Plaintiff, Alexandria Orta, sues defendant, former Tiffin-Fostoria Municipal Court Judge, Mark Repp, for violating her constitutional rights and for various state law torts.

     Plaintiff was a spectator in defendant's courtroom when defendant, without justification, ordered plaintiff to submit to a drug test. When plaintiff refused, defendant held her in contempt and ordered that she spend ten days in jail.

     Plaintiff subsequently brought this lawsuit under 42 U.S.C. § 1983 for violation of her First, Fourth, Fifth, Sixth, Eighth, and Thirteenth Amendment rights. She also brought claims for intentional infliction of emotional distress, invasion of privacy, sexual harassment, and negligence.

     Pending is defendant's Motion for Judgment on the Pleadings. (Doc. 18). Because I find that defendant has judicial immunity from this lawsuit, I must grant the motion.

**Background**

Plaintiff alleges that on March 11, 2020, she arrived at the Tiffin-Fostoria Municipal Court to observe proceedings involving her boyfriend, Trevor Danner.[1] The judge conducting those proceedings was the defendant, former Judge Repp.

Plaintiff alleges that she was sitting quietly in the back of the gallery when defendant began to engage with her. He stated, "Going to be a lot of drug tests today. Is that Trevor Danner's girlfriend back there?" (Doc. 14, pgID 121).

Later in the proceedings, when discussing a criminal defendant's decision not to use drugs, defendant Repp said to plaintiff, "That's good. I wish all of us could say that. Right Alexzandria?" (*Id.*).

Shortly before the proceedings against Mr. Danner began, defendant ordered, "Oh, before we get started, I think Alexzandria's under the influence. I want her drug tested." (*Id.*, pgID 122). The bailiff subsequently removed plaintiff from the courtroom to submit to a urine drug test. (*Id.*).

Plaintiff refused the drug test because she believed that it was "unwarranted and illegal." (*Id.*, pgID 123).

After waiting several hours near the probation office, plaintiff returned to the courtroom. Defendant stated, "You come into my courtroom, I think you're high, you're in trouble . . . We're going to hold you in contempt. I'm going to commit you for ten days." (*Id.*).

---

[1] In related disciplinary proceedings against defendant, the Ohio Supreme Court made factual findings consistent with plaintiff's allegations in this case. *Disciplinary Couns. v. Repp*, 165 Ohio St. 3d 582 (2021). Plaintiff has sought to incorporate those findings into a second amended complaint. (Doc. 22). That motion is still pending. In any event, whether I accept the Ohio Supreme Court's factual findings does not matter for purposes of this motion because in evaluating a motion for judgment on the pleadings, I must accept as true all of plaintiff's allegations in her complaint.

2

Defendant then issued a judgment entry finding plaintiff in contempt of court and sentencing her to ten days in jail or until she submitted to a drug test. (*Id.*, pgID 123-24).

While incarcerated overnight, plaintiff alleges that Sheriff's Department officers forced her to take a pregnancy test and undergo two full body scans, the latter because they believed that she may have been hiding contraband inside her body. (*Id.*, pgID 125).

The officers then transported plaintiff to a hospital where they forced her to take another pregnancy test and undergo a CAT scan. (*Id.*, pgID 126). The scan revealed that plaintiff was not carrying any contraband inside her body. (*Id.*).

The next day, on March 12, 2020, plaintiff's attorney filed a notice of appeal, motion requesting a stay of plaintiff's sentence pending appeal, and a habeas petition in state court. (*Id.*, pgID 127). The county prosecutor joined in moving to vacate defendant's contempt finding, and defendant agreed on the condition that plaintiff submit to a drug treatment assessment. (*Id.*).

The Ohio Court of Appeals, Third District, then reversed defendant's finding of contempt, holding that it "was without cause and constituted an invalid exercise of [defendant Repp's] contempt power." *State v. Orta*, 2020-Ohio-4514, ¶ 29. The court emphasized that defendant did not identify any legal basis for his actions, and the record was devoid of facts supporting the need for the drug test.

The Ohio Supreme Court reviewed defendant's conduct in resulting disciplinary proceedings and suspended him from the practice of law for one year. *Disciplinary Couns. v. Repp*, *supra*, 165 Ohio St. 3d. at ¶ 32. The court believed that such a sanction would "send a strong message to the judiciary that this type of judicial misconduct will not be tolerated." *Id.*

3

## Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

The same standard applies to a Rule 12(c) motion as to a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief. *E.g.*, *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). As with a Rule 12(b)(6) motion, "all well-pleaded material allegations of the pleadings of opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

## Discussion

Defendant primarily argues that I should dismiss the case against him because he is entitled to absolute judicial immunity. Because defendant had jurisdiction to control his courtroom and because he was acting in his judicial capacity at the time he issued the orders against plaintiff, he is immune from this lawsuit.

Plaintiff responds that defendant did not have jurisdiction because the Ohio Court of Appeals and Ohio Supreme Court found that he had no authority to order the drug test or to issue the contempt order. Plaintiff further argues that defendant was not acting in his judicial capacity because his orders were "personal and selfish," as plaintiff was not appearing before him as a litigant or party to a case. (Doc. 23, pgID 277). Alternatively, defendant was acting in an administrative or prosecutorial capacity, not a judicial one.

### 1.  Applicable Law Regarding Judicial Immunity

4

The parties agree as to the applicable framework for determining whether judicial immunity applies. Generally, judges are entitled to absolute immunity from all suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991). But there are two exceptions to this general rule. A judge will not be immune for 1) "actions, though judicial in nature, taken in the complete absence of all jurisdiction" or 2) "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* at 11.

While this doctrine may seem unfair to an individual litigant seeking to vindicate his or her rights against a judge, it ultimately protects the public at large because there is "a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). If judges were broadly personally liable for their erroneous decisions, "the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Id.*

### 2.  Whether Defendant Acted in the Absence of All Jurisdiction

Plaintiff first contends that defendant acted in the absence of all jurisdiction when he ordered her to submit to a drug test and subsequently held her in contempt of court. She points to the relevant decisions from the Ohio Court of Appeals and Ohio Supreme Court, which note that defendant did not have authority to issue these orders.

But as defendant correctly emphasizes, a judge can act in the excess of authority or jurisdiction without acting in the absence of jurisdiction. The Supreme Court has held that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he

has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

That raises the question: what does it mean to act in the clear absence of all jurisdiction? The relevant inquiry is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." *Id.* at 356. A court should construe the scope of a judge's jurisdiction broadly in determining whether this exception to absolute immunity applies. *Id.*

To illustrate the distinction between a judge acting in excess of jurisdiction or authority and a judge acting in the absence of jurisdiction, the Court in *Stump* provided the following example:

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* at 357 n.7.

This is not a case in which defendant attempted to issue an order on a subject matter outside his jurisdiction. Plaintiff does not argue, for example, that defendant was a family court judge but was resolving criminal cases.

She argues, rather, that he exceeded his authority by ordering plaintiff to take a drug test and holding her in contempt without any justification or legal basis for that action. Whether defendant's actions were justified is not at issue – the Ohio Court of Appeals and Ohio Supreme Court have already held that they were not. And defendant does not contest those findings.

But, as I explain above, that is not the relevant inquiry. A judge may act in excess of his or her jurisdiction or authority and still invoke the shield of absolute immunity.

6

Other district courts in this circuit have found that judges had jurisdiction in cases similar to this one. For example, in *Flanagan v. Shamo*, 111 F. Supp. 2d 892, 895 (E.D. Mich. 2000), a Michigan state court judge asked a witness who had finished testifying to remain in the courtroom. When the witness did not comply with that order, the judge summarily held him in contempt and sentenced him to ten days in jail. *Id.* While the Court of Appeals found that the judge had no authority to order a mere spectator to remain in the courtroom, that did not deprive the judge of all jurisdiction for immunity purposes. This is because "courts have general jurisdiction over courtroom administrative matters," and the judge's directive fell within that ambit. *Id.* at 899.

*Marchant v. Moore*, No. 3:09-CV-1218, 2010 WL 3872867 (M.D. Tenn. Sept. 28, 2010) is even more factually analogous to this case.[2] There, a Tennessee state court judge ordered a spectator to take a drug test pursuant to a courtroom practice of "routinely order[ing] individuals in his courtroom to be taken into custody and submitted to drug screens." *Id.* at *1. The judge did not articulate any reason for believing this spectator was under the influence. *Id.* Still, the reviewing court found that the judge had jurisdiction for purposes of judicial immunity because "Tennessee statutes provide broad authority for control of the courtroom, which would include the ability to detain and remove spectators." *Id.* at *3. Whether the judge acted in excess of his authority by detaining the spectator without cause was immaterial – he did not act in the absence of all jurisdiction. *Id.*

---

[2] Plaintiff argues that this is an unreported case from the Middle District of Tennessee, and therefore, it does not bind me. I agree that it is non-binding, but I find it persuasive nonetheless. The application of the judicial immunity doctrine in this case makes good sense to me and comports with the other precedents from the Supreme Court and Sixth Circuit that do bind me.

Similarly here, Ohio law provides judges with authority to control their courtrooms. The contempt power can be found in Ohio Rev. Code § 2705.01, which provides: "A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." *See also State v. Johnson*, 34 Ohio App. 3d 373, 375 (1987) (finding that a judge "must, of necessity, have the power to control the courtroom to insure that the administration of justice is not obstructed" by disruptive behavior).

Plaintiff argues that the Ohio contempt statute does not give defendant jurisdiction over plaintiff because it only allows him to punish individuals who are obstructing justice or misbehaving in some way. The record is clear that plaintiff was doing no such thing. But plaintiff approaches the issue too narrowly. She essentially argues that if defendant misapplied the contempt power, which it is undisputed he did here, he is acting in the absence of all jurisdiction. Courts are clear, though, that misapplication of the law does not deprive the judge of jurisdiction – it is, rather, an act in excess of jurisdiction or authority. *See Stump*, *supra*, 435 U.S. at 357 n.7 (convicting a defendant of a nonexistent crime is an act in excess of jurisdiction, not in absence of it); *Bradley v. Fisher*, 80 U.S. 335, 352 (1871) (labeling permissible conduct as criminal does not deprive a judge of jurisdiction for immunity purposes); *Marchant*, *supra*, 2010 WL 3872867, at *3 ("Defendant did not act in the clear absence of jurisdiction because the power to detain was within the scope of his authority.").

Defendant had the general power to control his courtroom and to hold individuals present there in contempt. Whether he used that power appropriately is not the relevant question.

I therefore find that defendant did not act in the absence of all jurisdiction, and accordingly, that exception to the judicial immunity bar does not apply in this case.

### 3. Whether Defendant's Actions Were Judicial Acts

Plaintiff next argues that defendant is not entitled to judicial immunity because his actions were not judicial. Instead, they were "personal and selfish," administrative, or prosecutorial.

Defendant responds that the motive for defendant's actions is immaterial and that the cases plaintiff cites in support of her arguments that his actions were administrative or prosecutorial are distinguishable from this one.

Whether defendant's actions were judicial depends on "the nature and function of the act." *Eldridge v. Tackett*, No. 21-5396, 2021 WL 8155163, at *1 (6th Cir. Sept. 7, 2021) (citing *Mireles*, *supra*, 502 U.S. at 13). This analysis "typically turns on two factors": 1) whether the act "is a function normally performed by a judge," and 2) "whether the parties dealt with the judge in his or her judicial capacity." *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999).

Holding an individual in contempt is widely accepted to be a judicial act. *See*, *e.g.*, *Temple v. Celebrezze*, 93 F. App'x 802, 803 (6th Cir. 2004) (issuing a contempt order is a judicial act); *King v. Love*, 766 F.2d 962, 968 (6th Cir. 1985) (same). More broadly, exercising control of the courtroom is likewise a judicial act. *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (barring an individual from entering the courtroom is judicial in nature).

Beyond these precedents, which I believe control the outcome of this analysis, if I independently apply the two-part framework, I arrive at the same result. The first question is whether the act encompasses a function normally performed by a judge. In evaluating this prong, I must look to the general function of the act rather than the act itself. Both acts at issue here, ordering an individual to take a drug test and holding that individual in contempt of court for refusing to do so, were intended to exercise control over the courtroom. That is certainly a function that judges normally perform. *See Marchant v. Moore*, *supra*, 2010 WL 3872867, at *4

9

(requiring a spectator to take a drug test is a judicial act because "a sitting judge has substantial authority to control the behavior of those present in her courtroom"). And while ordering a spectator to submit to a drug test is certainly not a common action for a judge to take, again, the question is whether defendant took that action pursuant to a judicial function. I find here that he did.

The second question in the analysis is whether plaintiff dealt with defendant in his judicial capacity. She clearly did. He was on the bench hearing cases in his courtroom at the time that the events giving rise to this case transpired. Just because plaintiff was not appearing before defendant as a litigant does not mean she would have had no expectation of dealing with him in his judicial capacity. As the court in *Marchant* explained, "A courtroom spectator should expect that they might be required to interact with the judge in her official capacity, from simple matters such as being asked to rise as a judge enters the court to more unusual circumstances such as being excluded from the courtroom for a variety of practical and propriety grounds." *Id.* at *5.

I therefore find that the actions at issue in the case were judicial in nature, and thus, the second exception to judicial immunity does not apply.

I address plaintiff's specific arguments regarding the application of this exception below.

### A. Whether Defendant's Actions Were Personal and Selfish

Plaintiff argues that defendant's actions were not judicial because they were "personal and selfish," which is evidenced by the fact that plaintiff was not appearing before the judge for any court-related business.

First, plaintiff cites to no case finding that an act cannot be judicial if it is directed at a person who is not before the judge as a litigant. Such a holding would not make logical sense, as judges have the authority to control their courtrooms and may order non-litigants like spectators

10

or lawyers to take certain actions. For example, a judge can order spectators to refrain from talking on the phone during proceedings, so as not to disrupt the judicial process. To suggest that is not a judicial act when it is taken in furtherance of a judicial function is illogical.

Further, other courts in this circuit have upheld a judge's immunity where he or she took action against a non-litigant. *See Marchant*, *supra*, 2010 WL 3872867 (involving action against a courtroom spectator); *Flanagan*, *supra*, 111 F. Supp. 2d (involving action against a witness whom the judge had already excused).

Second, defendant's motives are irrelevant to the question of immunity. Whether he "acted with a selfish or dishonest motive," as the Ohio Supreme Court found in his disciplinary proceedings, his actions do not "become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988); *see Bright v. Gallia Cnty.*, Ohio, 753 F.3d 639, 649 (6th Cir. 2014) (judicial immunity applies even where judge's actions were "petty, unethical, and unworthy of his office").

Therefore, even if I accepted that defendant acted selfishly and with malice, that does not entitle me to strip him of his immunity.

## B.  Whether Defendant's Actions Were Administrative

Plaintiff further argues that defendant's actions were administrative, not judicial, in nature.

She cites two cases in support, one dealing with a judge's alleged discriminatory employment decision and the other related to a judge's alleged discriminatory exclusion of certain jurors for a trial. *See Forrester*, *supra*, 484 U.S.; *Ex parte Commonwealth of Virginia*, 100 U.S. 339 (1879). In both of those cases, the Court found that the judge's acts were administrative.

11

However, plaintiff does not explain how her situation is analogous to either of those cases. To the contrary, a judge's employment decision is easily distinguishable from the facts of the current case because it was a personnel matter, not an action taken in open court.

The issue of jury selection is a closer one on its face, but the reasoning of the underlying opinion provides a clear distinction. In the 1879 case of *Ex parte Virginia*, the Court held that jury selection was administrative because it was often a task that county commissioners, supervisors, or assessors, and at one point, the sheriff, performed. *Ex parte Virginia*, *supra*, 100 U.S. at 348. Because it was not strictly a judicial function, it did not classify as a judicial act.

Here, however, no one argues that private citizens, even other public employees, have been tasked with issuing the kinds of orders that defendant did in this case.

I therefore find that his actions were not administrative in nature.

### C.  Whether Defendant's Actions Were Prosecutorial

Plaintiff lastly argues that defendant's actions were prosecutorial because he unilaterally prosecuted and convicted her for contempt.

She again cites two cases in support. The first case, *Barnes*, *supra*, 105 F.3d, involved a judge who modified the criminal charges brought against a defendant appearing in front of him and who assisted in preparing the new complaint. Aside from the fact that this case presents a completely different set of factual circumstances than the case before me, it does not help plaintiff because the Sixth Circuit ultimately ruled that those actions were not prosecutorial, and the judge was entitled to immunity. *Id.* at 1122.

Plaintiff also cites *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980), a case that involved a judge's "highly irregular conduct." The judge owned an apartment building, and one of his tenants had fallen behind on rent. *Id.* at 1231. Displeased by that fact, the judge asked

another tenant to call the police on him. *Id.* In the meantime, the judge proceeded to the initial tenant's apartment with a gun and held him there until the police arrived. *Id.* at 1231-32. The judge then directed the police to arrest and charge the tenant with criminal trespass. *Id.* at 1232. He further asked his business partner to sign a complaint against the tenant and allegedly forged a guilty plea and waiver of trial by jury on behalf of the tenant. *Id.* The judge then summarily arraigned, convicted, and sentenced the tenant without him being present. *Id.*

I agree with defendant that this case presents a wildly different set of facts than the one before me. The entirety of defendant's conduct in the present case occurred inside the courtroom where he was presiding over matters assigned to him. This stands in stark contrast to the facts in *Lopez* where a judge essentially took the law into his own hands and tracked an individual down at his place of residence.

Further, there is an important distinction between holding someone in contempt of court and charging someone with an offense like criminal trespass. The contempt power is an inherently judicial power. *See*, *e.g.*, *In re Prevot*, 59 F.3d 556, 565 (6th Cir. 1995); *Jackson v. Bachman*, No. 1:19-CV-422, 2021 WL 2223904, at *6 (S.D. Ohio June 2, 2021). The relevant Ohio statute permits judges to apply this power summarily. Ohio Rev. Code § 2705.01. That is not so for charges like criminal trespass, which a prosecutor must bring.

I therefore reject plaintiff's argument that defendant's actions were prosecutorial rather than judicial.

Because plaintiff has failed to establish that one of the two exceptions to the doctrine of absolute judicial immunity applies, I find that defendant is entitled to such immunity, and therefore, I must dismiss the case against him.[3]

## Conclusion

I want to be clear that I in no way condone the actions that led plaintiff to file this lawsuit against defendant Repp. It is undisputed that he acted beyond his authority, and his actions are inexcusable. It is for that reason that the Ohio Supreme Court suspended defendant from practice for one year, which appears to me to have been entirely justified.

Plaintiff cannot, however, recover damages from the defendant for those wrongs. While plaintiff, as an individual litigant, is certain to be disappointed in this outcome, the doctrine of judicial immunity is necessary to preserve an independent judiciary and to ultimately protect the public at large.

It is, therefore, ORDERED THAT

1. Defendant's Motion for Judgment on the Pleadings (Doc. 18) be, and the same hereby is, granted;

2. Plaintiff's First Amended Complaint (Doc. 8) be and the same hereby is, dismissed as against defendant Repp; and

3. The Clerk shall forthwith schedule a status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[3] The parties address other issues in their briefs, including whether the defendant is entitled to qualified immunity and whether plaintiff's substantive claims pass muster. Because I decide that absolute immunity bars plaintiff's claims against defendant Repp, I see no reason to address these other issues.

14

15